1      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF KENTUCKY
2        LOUISVILLE DIVISION

3
 UNITED STATES OF AMERICA,  )  Case No. 3:18-CR-176
4           )
     Plaintiff,   )
5           )
   VS.       )
6           )
 KENNETH R. BETTS,    )
7           )  July 2, 2019
     Defendant.   )  Louisville, KY
8

9         * * * * *

10      TRANSCRIPT OF SENTENCING
     BEFORE HONORABLE DAVID J. HALE
11      UNITED STATES DISTRICT JUDGE

12        * * * * *

13 APPEARANCES:

14 For United States:   Jo Lawless
          U.S. Attorney's Office
15         717 West Broadway
          Louisville, KY 40202
16
 For Defendant:    Brian Butler
17         600 W. Main Street, Suite 500
          Louisville, KY 40202
18

19 [Defendant present.]

20

21      April R. Dowell, RPR, RMR, CRR
       Official Court Reporter
22       232 U.S. Courthouse
       Louisville, KY 40202
23       (502) 625-3779

24 Proceedings recorded by mechanical stenography, transcript
 produced by computer.
25

2

```
1          (Begin proceedings in open court 1:28 p.m.)

2          THE CLERK:  3:18-CR-176, United States of America

3    versus Kenneth Betts.

4          MS. LAWLESS:  Good afternoon, Judge Hale.

5    Jo Lawless on behalf of the United States.

6          MR. BUTLER:  Good afternoon.  Brian Butler on behalf

7    of Mr. Betts, sir.

8          THE COURT:  So when we last met I advised counsel

9    and the defendant that I had after careful consideration

10   decided to reject the parties plea agreement at that time and

11   I have received and spent the last bit of time reviewing a new

12   plea agreement; is that correct?

13         MR. BUTLER:  Yes, sir.

14         MS. LAWLESS:  Yes, sir.

15         THE COURT:  And am I also -- do I also understand

16   correctly that this new plea agreement substantially tracks

17   the prior plea agreement in all respects, say, for the agreed

18   upon sentencing range?

19         MR. BUTLER:  Yes, sir.  It's exactly the same except

20   the numbers in that one section.

21         MS. LAWLESS:  That's correct, Your Honor.  It's set

22   out in numbered paragraph 11.  That's the only change.

23         THE COURT:  And does counsel agree that we do not

24   need to repeat the entire change of plea colloquy with the

25   defendant?
```

```
 1              MS. LAWLESS:  Yes, sir.

 2              MR. BUTLER:  Yes, sir.

 3              THE COURT:  Now, there are some questions that I

 4    think are necessary for me to address with Mr. Betts directly

 5    in light of the submission of the new plea agreement, so let's

 6    take that up now, Mr. Butler.  First of all, Mr. Betts, is

 7    this your signature here on page eight of this new plea

 8    agreement --

 9              THE DEFENDANT:  Yes, sir.

10              THE COURT:  -- dated today?

11              THE DEFENDANT:  Yes, sir.

12              THE COURT:  And did you go over the plea agreement

13    with Mr. Butler before you signed it?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  Do you have any remaining questions for

16    him regarding the contents of your plea agreement?

17              THE DEFENDANT:  No, sir.

18              THE COURT:  Do you agree with all of the terms that

19    are written here in your plea agreement?

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  Now, you will recall a few months back

22    when we had a comprehensive hearing regarding your first plea

23    agreement that we went over all of your rights that you must

24    waive or give up in order to plead guilty.  We talked about

25    some matters -- personal matters -- one or two of which I'm
```

1    going to revisit again today, but first I want to make sure

2    that with respect -- well, let me just ask you, do you recall

3    that exchange?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Now, do you have any questions for

6    Mr. Butler or for me regarding any of the matters that we

7    talked about at that time?

8            THE DEFENDANT:  No, sir.

9            THE COURT:  Now, at that time I asked you a series

10   of questions that I described to you as being personal in

11   nature.  I don't need to repeat all of them, but I do need to

12   inquire if today you are under the influence of either alcohol

13   or drugs?

14           THE DEFENDANT:  No, sir.

15           THE COURT:  Are you clearheaded today?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT:  And, Mr. Butler, you have counseled with

18   your client, I know, extensively.  With respect to your

19   discussions with him today, do you have any reason to believe

20   that he is impaired?

21           MR. BUTLER:  No, Your Honor.

22           THE COURT:  Now, let me ask you also, Mr. Betts, if

23   anyone has threatened you or threatened anyone close to you or

24   forced you in any way to agree to this new plea agreement?

25           THE DEFENDANT:  No, sir.

1          THE COURT:  Is it your choice to continue with your

2    prior guilty plea and this new plea agreement?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  Now, you will recall we talked again at

5    length in your prior hearing about how your plea agreement is

6    written pursuant to Rule 11(c)(1)(C) of the Federal Rules of

7    Criminal Procedure and so I want to simply touch base again on

8    that matter.

9          I have already accepted your guilty plea at that

10   time, but you will recall that I told you then that while I

11   was accepting your guilty plea, I had not yet at that time

12   decided whether to accept your plea agreement and in fact

13   later I decided that I could not accept your plea agreement,

14   but you have not withdrawn your guilty plea and I want first

15   of all for you to confirm for me now on the record that that

16   has been your intention; to leave in place your guilty plea to

17   the charges contained in the indictment?

18         THE DEFENDANT:  Yes, sir.  That's correct.

19         THE COURT:  Now, having already accepted your guilty

20   plea, I want to make sure you understand that I still have to

21   decide whether to accept your new plea agreement.

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you understand that?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you also understand that if I do

1    accept your new plea agreement, you will not be permitted to

2    withdraw your previously entered pleas of guilty?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you have any questions about that?

5              THE DEFENDANT:  No, sir.

6              THE COURT:  Ms. Lawless, I think that is sufficient

7    coverage from the change of plea colloquy before.  I think

8    it's been sufficiently updated unless you have any other areas

9    of concern that we should cover.

10             MS. LAWLESS:  No, Your Honor.  I agree with you.

11             THE COURT:  Mr. Butler, have we covered

12   everything -- or updated everything that needs to be updated

13   as of today?

14             MR. BUTLER:  Yes, sir; I believe you did.

15             THE COURT:  So then without objection we should

16   proceed to the sentencing portion of this hearing.

17             MR. BUTLER:  Yes, sir.

18             THE COURT:  So the presentence investigation report

19   has been received and reviewed by each side; is that correct?

20             MS. LAWLESS:  Yes, sir.

21             MR. BUTLER:  Yes, sir.

22             THE COURT:  And, Mr. Betts, have you had enough time

23   to go over the PSR with Mr. Butler?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Do we have objections to take up to the

1   report?

2        MR. BUTLER:  Judge, we had objected to the

3   application of the distribution enhancement.  The court heard

4   arguments on that last time and overruled our objection, so we

5   won't address that again, Your Honor.  We maintain that was

6   our position and won't waste your time.

7        THE COURT:  I am satisfied that the record is

8   sufficient on that discreet issue unless there is anything

9   further to take up.

10        MR. BUTLER:  No, sir.

11        THE COURT:  Ms. Lawless, anything further from the

12   government?

13        MS. LAWLESS:  No, sir.

14        THE COURT:  I believe we discussed at the prior

15   hearing the guideline calculations but let's just restate them

16   now.  They are in the PSR beginning on page eight.  The

17   guidelines are grouped.  There are seven counts here and from

18   those seven counts the sentencing guidelines suggest three

19   groups.

20        The first count group covers Counts 1 through 3

21   beginning with a base offense level of 32 under 2G2.1.  The

22   distribution enhancement is two levels.  The -- the

23   enhancement for involvement of a computer to solicit -- I'm

24   sorry -- to solicit participation by a minor is an additional

25   two levels.  That gets us to an adjusted offense level under

1  group one of 36.

2       Count group two covers Counts 4 and 5.  That begins

3  with a base offense level of 28 under 2G1.3.  And after an

4  enhancement for the use of a computer of two levels, another

5  enhancement of two levels for commission of a sex act or

6  sexual contact results in an adjusted offense level of 32.

7       Group three is simply Count 6.  And that is

8  similarly situated in that it begins with a base offense level

9  of 28 and is enhanced two levels for the use of a computer

10 resulting in an adjusted offense level of 30.  And count group

11 four is simply Count 7 from the indictment.  Also base offense

12 level of 28 enhanced two levels for the use of a computer

13 resulting in adjusted offense level of 30.

14      Now, as we discussed previously, the greatest

15 offense level here for these groups falls from count group one

16 which covers Counts 1 through 3 of the indictment.  That is a

17 level 36.  So that level 36 then carries over.  And the

18 offense level is then increased another three levels under

19 guideline section 3D1.4 based on the number of units assigned

20 here resulting in a combined adjusted offense level of 39 and

21 then there is a five-level enhancement under Chapter 4.

22      The career offender guideline does not apply, but

23 the defendant is determined under the guidelines to be repeat

24 offender against minors, and so a five-level enhancement is

25 applied getting us to a 44.

1            Then after acceptance of responsibility credits, the

2    total adjusted offense level is 41.  Now, that's -- there are

3    a lot of moving parts there, but I believe I have stated that

4    correctly as outlined in the PSR.

5            MS. LAWLESS:  You did, Your Honor.

6            MR. BUTLER:  Yes, sir.

7            THE COURT:  Any other objections to the guidelines

8    that we need to take up at this time?

9            MS. LAWLESS:  No, sir.

10           MR. BUTLER:  No, Your Honor.

11           THE COURT:  The PSR will then be adopted.  The

12   report will be filed in the record under seal.  In the event

13   of an appeal, the parties, court, and counsel will have access

14   to it.  Now, are there any motions to be taken up?

15           MS. LAWLESS:  No, Your Honor.

16           MR. BUTLER:  No, sir.

17           THE COURT:  Any other discussion with respect to the

18   factors of 3553(a) for the court's consideration?

19           MR. BUTLER:  Judge, if I may, Mr. Betts' parents

20   would like to address the court.  I don't know if you would

21   rather hear from me first or them first.  I don't know what

22   your preference is, sir.

23           THE COURT:  Why don't you go ahead and perhaps you

24   can give some context and then I would be happy to hear from

25   them.

1          MR. BUTLER:  Yes, sir.  Judge, we would -- we would

2     respectfully request the court to sentence Mr. Betts to 188

3     months.  I'll tell you how I think we get there.  If the court

4     looks at the guidelines here, the first thing that comes --

5     and I try to address this in my sentencing memo, but I think

6     given where we are today versus last time, it bears

7     mentioning.

8          While the use of a computer does apply under the

9     guidelines as I cited in our sentencing memoranda, that is an

10    enhancement that I believe statistically according to the

11    Department of Justice applies over 98 percent of the time.  It

12    is -- in the modern stage, it is almost universal.

13         The other thing that I cited from the Department of

14    Justice study is that because of that, it -- I think the

15    guideline enhancements were intended to differentiate, "Well,

16    your sentence should be a little worse than the next person

17    because you did X versus you" -- "you didn't do X."  For

18    example, a leadership position where obviously the guidelines

19    apply and give a higher sentencing recommendation to the court

20    for a leader than they do for someone who is not in that

21    category and actually recommend lower sentences for people who

22    are minor and minimal participants.

23         In modern society the use of a computer no longer

24    differentiates Kenneth Betts from anyone else.  It simply

25    applies to everyone.  And also noted in that Department of

1    Justice study is -- is this typically leads to variance, so

2    one of the things the court obviously has to consider in 3553

3    is a sentence that's not greater than necessary to accomplish

4    the sentencing goals.  Also looking to the guidelines as --

5    the purpose of them was to try to keep sentences within some

6    range between participants and this type of conduct with the

7    use of a computer.

8            Applying that to Mr. Betts, I think, puts him in a

9    different category than most because I believe it is

10   oftentimes subject to variance according to the Department of

11   Justice around the country.  It certainly even within this

12   district has been frequently subject to variance for those

13   reasons.

14           So I think while it applies and probation is

15   certainly right with adding it, I don't think it gives us any

16   differentiation between Mr. Betts and anyone else, so I would

17   start with that.  The second thing is is the court

18   overruled --

19           THE COURT:  Let me just ask you and ask

20   Ms. Lawless also to weigh in on this.  Given that the

21   guidelines here that we just outlined result in a low-end

22   sentence range -- or a sentencing range that begins at the low

23   end at 324 months, if I accept the parties new plea agreement,

24   it will be -- it will necessarily be a below guideline

25   sentence, correct?

1          MR. BUTLER:  Yes, sir; it would.

2          THE COURT:  And so does counsel agree as to whether

3     if I accept the plea agreement, I am getting there via a

4     departure or a variance?

5          MS. LAWLESS:  A variance, Your Honor.

6          MR. BUTLER:  Yes, sir.

7          THE COURT:  So that would be a variance under the

8     guidelines which would at least theoretically take into

9     account the very arguments that you're making; is that

10    correct?

11         MR. BUTLER:  Yes, sir.

12         THE COURT:  And to which the government is offering

13    little objection presumably since you agreed to the terms of

14    the plea agreement?

15         MS. LAWLESS:  And perhaps I have them flipped in my

16    mind, Your Honor.  My -- my understanding is that departures

17    relate to the guidelines and variances relate to 3553(a).

18         THE COURT:  3553(a).

19         MS. LAWLESS:  And so to that degree, that's why I

20    said a variance because we think that we can urge the court to

21    accept the plea agreement on a variance under the statutory

22    factors without affecting or asking for departures under the

23    guidelines because we do believe that the guidelines are

24    appropriately applied.

25         THE COURT:  Only -- I perhaps should have stated

1    this more precisely.  To the extent that the conduct that

2    Mr. Butler is addressing as -- with respect to the use of a

3    computer is typical conduct that is found now throughout

4    society, to the extent that that can be addressed under

5    3553(a)'s factors or considered there in whether a downward

6    variance is appropriate, would that argument fit into the

7    variance category?

8            I'm not asking you to accept a departure because I

9    don't think there is a basis for Mr. Butler to make a

10   departure motion here.  I think we are clearly and solely in

11   the category of a variance applicable to the statutory factors

12   as you point out, but my point is is what he is talking about

13   has, I think -- does it not?  And if it doesn't, that's fine.

14   If the government disagrees, that's fine -- an analogue to be

15   found in 3553(a).

16           MS. LAWLESS:  Yes, sir.  I think that under 3553(a),

17   the court can consider absolutely everything.  I would

18   disagree.  I can't join in the request that Mr. Butler is

19   making with regard to the use of a computer based on my

20   understanding of Sixth Circuit law.  I understand what he's

21   saying from a practical standpoint; that now most offenders

22   who are violating these statutes that are at issue in

23   Mr. Betts' case are using a computer, but -- and I apologize,

24   Judge.  I don't have the case right in front of me.

25           There is a very recent Sixth Circuit case that says

1    just because it applies to lots of different people doesn't

2    make it meaningless.  The guidelines were designed to -- if

3    you engage in this kind of behavior and that behavior causes a

4    harm, then it's an appropriate thing.

5            So I'm not trying to be difficult because obviously

6    we've reached an agreement and want the court to follow the

7    law, but I can't join in saying that that two-level

8    enhancement shouldn't apply here or anywhere else.  I do think

9    that that is something that you can take into consideration in

10   the overall facts and circumstances of this case under the

11   statute, however.

12           THE COURT:  No.  I've already found that the

13   guidelines are properly calculated, so it would not be

14   accepting Mr. Butler's argument for those purposes.

15           MR. BUTLER:  Judge, likewise -- and I guess kind of

16   addressing the United States' points.  The way I see

17   sentencing, the court's determined whether the guidelines were

18   appropriately applied.  There is a use of computer enhancement

19   and probation appropriately applied it and we didn't object to

20   it because that's what it is.

21           But when we look at 3553(a) and we try to decide

22   whether those -- that guideline sentence is appropriate in a

23   given case, I think that all those arguments are appropriate

24   for the court's consideration.

25           With regard to the distribution enhancement, the

1   court overruled our objection.  Nonetheless, I think it's in a

2   similar vein here.  Typically, I believe, that distribution is

3   applied in cases because there's an additional harm that is

4   typically associated with distribution which is that child

5   pornography makes it into the internet, the child pornography

6   is then viewed by other people.  It makes it impossible for

7   that to ever be taken back.

8           And I think the government's argument in many cases

9   is that that harm continues to occur because that image may be

10  viewed 10 years from now, it may be viewed 15 years from now.

11  This case is entirely different.  We're talking about four

12  images that victim number one had given to Mr. Betts and that

13  Mr. Betts then sent back two of those to victim number one.

14          There was no -- absolutely no indication that it was

15  ever sent anywhere else, that it was never downloaded on the

16  internet, anything along those lines.  So while the court

17  found that that properly applied, that additional two levels

18  really is enhancing him, in my mind, for a harm that did not

19  occur here, nor was it intended to occur here.  There's

20  absolutely no evidence that Mr. Betts intended to ever do

21  anything with those images other than send them back to the

22  recipient.

23          I'd also note, while it was applied properly, there

24  is to some extent double counting between the grouping and the

25  pattern of behavior.  Mr. Betts received an additional three

1    levels for grouping because there were more than one victim.

2    He received a five-level increase on top of that because there

3    was a -- deemed to be a pattern.

4         Again, not objecting to how it was calculated, but

5    when we look at it globally of trying to fashion a fair

6    sentence, punish him for what he's done, but not give him a

7    sentence that's greater than necessary, I think the court can

8    take all of those factors into account.

9         Where I came up with the suggestion of 188 months,

10   number one, was based upon the court's, of course, refusal to

11   accept the last plea agreement, but number two, if we -- if we

12   subtract out the two levels for the computer and subtract out

13   the two levels for the distribution, that leaves us with a low

14   end of 188 months.  I'm not suggesting as a departure.  I'm

15   suggesting that as a variance as a way to achieve what is a

16   reasonable sentence under the circumstances.

17        I would also note with regard to 3553 which I tried

18   to address in great detail in my brief and I'm not going to go

19   back through all of it, but I do think it merits bringing to

20   the court's attention.  Mr. Betts, his crimes, his victims,

21   were much older than we typically see in federal court.

22        In fact, a lot of this conduct occurred with people

23   that were 17 years old.  Had they been one year older, it may

24   not have been moral, it may not have been something that he or

25   his family would have been proud of or any of us would have

1    been proud of, but it would have been legal.  I think that is

2    the differentiation between him and many of the people that

3    appear before the court because obviously, again, when we look

4    at the 3553 factors, the guidelines don't differentiate

5    between "I enticed a six-year-old" and "I enticed a

6    17-year-old."  It's the same guideline range.

7            But I think if we ask the average citizen on the

8    street or any of us what would be more offensive to us as a

9    society or as practitioners or citizens, however you want to

10   do it, I think we would clearly say it is much more offensive

11   to have done that with much younger children.  I think that

12   differentiates him and is a strong argument for a variance.

13           I would also note -- and it's along that same

14   line -- the first victim -- I'm just going to call it victim

15   number one for lack of -- the person who drives the highest

16   guideline range -- when the court was going through -- that

17   conduct occurred, Mr. Betts was about three or four years

18   older than that person.  It was -- he was -- the victim was

19   17.  I think Mr. Betts was 21, 22 years old.  I'd have to go

20   back and check exactly, but they were very, very close in age.

21   I think that also when you look at that --

22           THE COURT:  Was Mr. Betts a sworn officer at that

23   time?

24           MR. BUTLER:  He was -- yes, sir.  He was an officer.

25   Finally, I think probably the most important point -- I

1    shouldn't say "finally."  I think probably the most important

2    point is with regards to Mr. Betts, all this conduct stopped

3    well before this investigation started which is exceedingly

4    rare.  I'm not going to say it's the only time I've ever stood

5    before a court and made this argument, but it's been a very,

6    very small handful of times where this has happened.

7            Mr. Betts -- the investigation began by law

8    enforcement in 2016 in relation to another police officer

9    prompted them to start looking at Mr. Betts.  Law enforcement

10   did about as thorough of a job as I have ever seen law

11   enforcement do on any case at any level.  They -- in part of

12   that, they seized his communication devices in 2016.

13           As the court can see, the last crime that was

14   committed was in 2014 and that was I believe in relation to

15   sending those photos back.  But the point being, for

16   approximately two years without law enforcement intervention,

17   without, "Oh, my gosh, I'm going to come in front of Judge

18   Hale and I want to get the best result," he stopped all this

19   conduct.

20           He was gainfully employed, had two jobs neither of

21   which put him in contact with teenagers.  I mean, he didn't

22   put himself in those kinds of positions.  I think that is a

23   strong argument for a variance because I suspect even with

24   Ms. Lawless' career, she can probably count on one hand if

25   ever she's had a situation where there's been this kind of gap

1    between offense and beginning of the investigation.

2           I've had a lot of cases where the investigation

3    started and the conduct ceased because people were worried

4    that they would be in front of the court or in front of the

5    prosecutor, but this doesn't happen very often.

6           And finally I would note, Your Honor, which I think

7    bears mentioning, while Mr. Betts pled guilty and he received

8    his acceptance of responsibility in his particular case, he

9    went above and beyond as he possibly could.  I mean, we

10   arranged information with the United States, he submitted to

11   questioning by the United States, did everything he could to

12   resolve this case as expeditiously as he could to save his

13   family, the victims, the United States, and everyone else as

14   much agony as he could given the circumstances.

15          So for those reasons, I would respectfully request

16   the court to accept the plea agreement and sentence him to 188

17   months kind of under the formula we suggested.  His parents

18   would like to address the court if that's appropriate for the

19   court.

20          THE COURT:  It is.  I'm going to get Ms. Lawless'

21   response first.

22          MS. LAWLESS:  Thank you, Your Honor.  There are some

23   things that my esteemed colleague, defense counsel, made some

24   points that I agree with, maybe not to the full extent that he

25   did but certainly would fall into the 3553(a) variance

1    options.

2            With regard to the distribution enhancement in this

3    particular case, Mr. Butler is correct, we don't have somebody

4    who's pushing out loads of child pornography to random people

5    or making it available to people, so that particular harm

6    under the distribution enhancement is not an issue in this

7    case.

8            There is a different kind of harm in this case and

9    it has to do with John Doe one, the first victim, in

10   receiving -- you know, years after this occurs and then you

11   hear from Mr. Betts again and he's sending back these pictures

12   and, you know, conjuring up, "Remember back when we were doing

13   these kinds of things."

14           So there is a harm there, Your Honor, that is

15   different than what we see in most of the typical distribution

16   types of charges, but there is a harm nonetheless.  But I do

17   agree with Mr. Butler that that is something that is -- that

18   differentiates Mr. Betts' conduct in this particular case from

19   generally what we see with other individuals who are engaged

20   in distribution.

21           Whether that should result in a complete reduction

22   of two levels or not, that's not really how I had approached

23   looking at the guidelines and putting them in the context that

24   the Supreme Court has told you they need to be in; that it's

25   just a starting point.  It's a guidepost for you.  And then

1    the statute really trumps the day, you know -- in a manner of

2    words -- in considering the guidelines and everything else,

3    but I agree with Mr. Butler that the distribution is a

4    different type of distribution.

5         With regard to the enhancements or the plus-two for

6    the multiple victims because of the grouping, I mean, that is

7    what it is.  It's -- there were four completely different

8    separate individuals who were harmed through similar kinds of

9    criminal conduct on Mr. Betts' part, but the guidelines in

10   trying to capture and differentiate between offenders says if

11   you have multiple victims, this is how it's going to fall out,

12   and so I think that is what it is and there were distinct

13   harms for these different individuals.

14        I disagree part ways with defense counsel that that

15   somehow results in a double counting because of the pattern

16   enhancement or the repeat and dangerous sex offender under

17   4B1.5.  The reason that Mr. Betts gets that five level bump --

18   and it would only take one victim if there were two or more

19   instances.  And in this particular case we know that that

20   happened certainly with John Doe number one, arguably also

21   with Jane Doe, and certainly with John Doe number two as well.

22        So I don't think there is a double counting per se,

23   so I don't necessarily agree with how the math is or maybe put

24   as much emphasis on whether we subtract two or one or three or

25   what have you, but I do think for the reasons that we entered

1    into this agreement and have suggested it and presented it to

2    the court, that when you start with those guidelines as the

3    beginning but then work over to the 3553(a) factors, when we

4    go through those -- and we did it and I'm not going to read it

5    to you because I know you've reviewed our sentencing memo.

6            But when we look at the nature and circumstances of

7    the offense, and then for the need for the sentence imposed to

8    reflect seriousness, promote respect for the law, provide just

9    punishment, afford adequate deterrence, protect the public

10   from further crimes.  And then there's that (d) that talks

11   about needed educational or vocational training, but really

12   looking at those first three that I just talked about and not

13   running afoul of sentencing disparity or taking that into

14   account.

15           That when you look at everything that you know, we

16   know, and presented to you that's in the PSR that's in the

17   plea agreement, that the court can, we believe, reliably land

18   in this range of what we have suggested to you between 15 and

19   20 years.

20           We will stand on our recommendation that was in the

21   sentencing memorandum before, but admittedly it doesn't get

22   into a mathematical "We're going to add five and take away

23   three" and, you know, move pieces around, if you will, Your

24   Honor, because we think that if you look at the language of

25   3553(a), that you can make a variance from the recommended

1    range to a sentence that is sufficient but not greater than

2    necessary in the plea agreement that's been provided to you.

3    And that would be our position with regard to the variance.

4          I also need to advise the court that Jane Doe is

5    here and would like to address the court at the appropriate

6    time.

7          THE COURT:  So what is the government's recommended

8    sentence here?

9          MS. LAWLESS:  We are standing on the -- in our

10   sentencing memo; the 15 years.

11         THE COURT:  Mr. Butler, did you -- you wish to have

12   some folks speak at this time?

13         MR. BUTLER:  Yes, sir.  Just two and then Mr. Betts

14   would like to speak prior to the court making its decision.

15         THE COURT:  That would be fine.

16         MR. BUTLER:  Would you like them to approach the

17   podium, sir, or what would you --

18         THE COURT:  I think it's up to you as to whether you

19   would simply like them to address the court or if you would

20   prefer them to actually be sworn and testify.

21         MR. BUTLER:  I think they just want to address the

22   court, Your Honor.

23         THE COURT:  That would be fine.

24         MR. BUTLER:  Roy Betts would like to address the

25   court; Mr. Betts' father.

1          SPEAKER:  Honorable Judge Hale, my name is Roy

2     Betts.  I am the father of Kenneth Betts.  There have been a

3     number of letters written to you on Kenneth's behalf.  I would

4     like to share my feelings on this subject.

5          Kenneth started out as an Explorer at 14 years old.

6     Most of the victims were Explorers in the program with him.

7     As he got older he was hired by LMPD to be a police officer.

8     Because of his background in the Explorer program, he was

9     placed into a position as an advisor with very little or no

10    proper training as to how -- how to interact with the other

11    Explorers.

12          The communication that Kenneth had as an Explorer

13    with the victims in the past continued on.  I feel that this

14    was one of the major problems in the whole incident.  Most of

15    the Explorers were older teenagers very close to being legal

16    age.

17          The news media also reported that one or more of the

18    Metro council members had some type of conflict of interest in

19    this case that drew even more adverse attention to it.  After

20    he resigned from the police department in 2014, my son Ken

21    turned his life around, has not engaged in any of this type

22    activity since.  He met and married a nice lady who's a school

23    teacher and they now have a three-year-old daughter.

24          Kenneth has been very active in his church on the

25    safety and security team and many letters have been written to

1    you to support these facts.  I'm asking for leniency in your

2    sentencing of my son.  Judge Hale, I thank you, I thank your

3    staff for all the effort that you put into this case,

4    respectfully.

5            SPEAKER:  My name is Karen Betts.  I'm Kenneth's

6    mother.  He was raised in a Christian home.  He loved school

7    and staying busy.  He worked two jobs at the age of 14 and

8    saved his money to buy a car.  He always wanted to help with

9    whatever he could do.

10           He helped in the library at elementary school.  When

11   he got older, he volunteered for Dare to Care.  He became a

12   volunteer firefighter as his dad was.  He also did the safety

13   team at church where he helped the elderly cross the busy

14   road.

15           He has fought strong at cancer at a young age.  He

16   helped me through open heart surgery two weeks before he

17   started his chemo, and through my hip replacements.  He

18   expressed regrets, and I do also, for his mistakes to his

19   family and his church.  He has asked for counseling from his

20   church.

21           He has repented from his sins years ago as we all

22   make sins and he has turned his life around and had a miracle

23   baby girl.  He was very active in his daughter's life.  He's

24   always wanted to work -- he's always worked two jobs to

25   support his family even driving four hours a day to keep his

1    job through these tough times.

2            Even being incarcerated, he continues to go to

3    church.  He doesn't sit idle there.  He helps his fellow

4    inmates as they struggle through hard times also.  I'm sure if

5    he can go on to trade schools, study, or work while he's

6    incarcerated, he will.  He has already -- already read

7    numerous self-help and Christian books to help himself.

8            He is remorseful for what has happened years ago.

9    His family, friends, and church will continue to support him

10   after his sentence is complete.  We all will continue to pray

11   and care for him for a lighter sentence.  I will have a place

12   in our home when he is released.  Thank you for listening and

13   I appreciate your time.

14           THE COURT:  Thank you both.

15           MR. BUTLER:  Your Honor, we have no one else other

16   than Mr. Betts whenever the court wants to hear from him.

17           THE COURT:  He's welcome to speak now if he chooses.

18           THE DEFENDANT:  Your Honor, thank you for allowing

19   me to address this court.  I stand before you embarrassed and

20   ashamed of my conduct.  I have made great mistakes and sins in

21   my past and I take full responsibility for all of them.  I

22   never intended to hurt anybody even though I know I have.

23           My words will never do justice, but I am truly sorry

24   and I ask for forgiveness.  Not a day that goes by that I'm

25   not remorseful and I regret these errors.  I know I will live

with them the rest of my life.  I am blessed and thankful to
have good friends and family here today to support me.  This
includes my loving mother and father.  They have shown me that
while God hates sin, they still love the sinner.

I want the court to know that my parents raised me
in a Christian house instilling honor, respect, and integrity.
It was me alone who decided to dishonor their faith and values
they taught me.  Their unconditional love and support has
helped me so much as they stood at every point in this valley
of my life.

At a young age I knew I wanted to go into public
service and serve my community.  This came from my father's 30
years as a firefighter and my mother's love and compassion as
a stay-at-home mom.  I have spent most of my childhood in the
firehouse watching my father help others.

In 1999 at the age of 14 years old, I become a
police officer -- excuse me -- police Explorer with the
Louisville Metro Police Department.  I was the department's
Explorer of the Year in 2004.  I worked in every position and
earned the position of program commander in 2005.

In 2004 I felt called to do even more and I followed
in my father's footsteps and became a firefighter at the age
of 18.  In 2006 I was hired by LMPD as the youngest recruit in
my class.  This was a dream come true and something I worked
very hard for.  I spent the past six years volunteering

1    thousands of hours as a firefighter and a police Explorer.  I

2    truly wanted to be the best police officer possible.  I worked

3    hard and volunteered for any extra assignment I could get.  I

4    become a training officer, a training instructor, the health

5    and safety officer, and member of the special response team.

6           I earned several awards from merit to lifesaving.

7    When I was hired by LMPD, I had not completed a college

8    degree.  While working full-time with LMPD, I completed both

9    my bachelor's and my master's degree from the University of

10   Louisville and I won class rep for my doctoral degree.

11          I share this all with you today to show you how much

12   I've lost.  Being a law enforcement officer was not just a job

13   or something I did.  It was a calling and a dream that I

14   worked very hard to achieve.  My misconduct -- my misconduct

15   that I did destroyed all of this and I am the only one

16   responsible for that.

17          At 21 years old, I transitioned the same year as a

18   police Explorer and peer to police officer and Explorer

19   supervisor.  While I had lots of training in law enforcement

20   tactics, I don't think I was prepared to properly supervise

21   those who used to be my peers and friends.  Because of these

22   previous relationships, I continued to have the same casual

23   conversations with my subordinates as if they were my peers.

24   As a supervisor, these casual and mutual conversations

25   continued but some turned inappropriate for which I am

1   responsible for.

2          I know this has led to pain, stress, and suffering

3   to the victims and I am truly sorry and I will ask and pray

4   for your forgiveness.  In 2013 the internal police department

5   investigation revealed my misconduct.  During the same year,

6   my mother was having heart problems and shortly after would go

7   through open heart surgery.

8          Within the same time I also learned that I had

9   cancer.  My world felt shattered.  I didn't know if I would

10  live through it.  The doctors didn't give me a strong chance.

11  A lot of people did not know this and I didn't share it with a

12  lot; kept it to my family.  I had to go through aggressive

13  chemotherapy eight hours a day five days a week.  I lost a lot

14  of weight and all my hair.  I was very weak, but I continued

15  to work while fighting for my life.

16          At the same time, I was the department's health and

17  safety officer and I knew I couldn't let others down.  In 2014

18  I won my battle with cancer but I voluntarily resigned from

19  LMPD accepting full responsibility for my conduct.

20          Cancer is a terrible illness and one that I lost

21  both my grandparents from, but God used it to teach me a lot.

22  I look back on my life and I know that I was not living the

23  life that God and my parents taught me to.  I quickly took

24  proactive measures to be an absolute follower of God and not

25  just a Sunday fan that I had become.  I met with my parents,

1  my girlfriend who is now my wife, and two good friends and I

2  repented of my sins.

3       Since 2014 and years before this investigation

4  began, there's been no misconduct.  Following this, I got

5  closer to God and my church.  My father and I become leaders

6  on our church safety team.  In 2015 I married my best friend

7  at our church in front of all our family and friends and we

8  moved to Shelby County to start our family.  It was a dream

9  come true and something I'm very happy with.

10       The doctors told me due to my cancer and

11  chemotherapy, I had a rare chance of having children.  I

12  always wanted a family, however.  In 2016 God blessed us with

13  the birth of my sweet daughter.  The past few years have been

14  very difficult.  Months after the birth of my daughter in 2016

15  this investigation was opened and has put so much stress on

16  those I love.

17       My wife, parents, my church, employers, family and

18  friends have been harassed and threatened so much.  It really

19  has made advanced battle with cancer seem easy.  With the

20  heavy media coverage, I felt like I lived in prison for

21  several years not being able to properly support my family.

22       While I lost several jobs, I always tried my best to

23  provide for my family.  The most recent position I had I was

24  driving four hours roundtrip daily to Cincinnati to avoid the

25  media spotlight so I could support my wife and daughter.  For

1   several months I've spent by myself in a small solitary

2   confinement cell most days 24 hours a day.

3          While this has been hard, the hardest has been my

4   sweet three-year-old daughter carrying around a picture of me

5   and not knowing where I'm at.  There are no words to describe

6   the pain and emptiness in my heart because of this.

7          Your Honor, I have made mistakes and I take full

8   responsibility for all of them.  I've also taken proactive

9   steps and turned my life around and not committed any criminal

10  conduct while this -- before this investigation has started.

11  I have for years shown to be a good member of this community,

12  husband, and father.

13         I have fully cooperated with this investigation,

14  participated in interviews by the government.  I plan to spend

15  my time in prison helping myself and others to improve all

16  aspects of my life mentally, physically, and spiritually.

17         It has been a challenge being a law enforcement --

18  former law enforcement officer in jail, but I take that

19  responsibility to help others as much as possible.  I share

20  this with you today to ask your grace and your mercy in

21  sentencing.  I deserve to be punished.  I made mistakes and

22  serious ones, but I ask for your compassion so I can reenter

23  society, work hard to rebuild my life especially with my sweet

24  daughter who deserves to have a father in her life.  Thank you

25  very much.

1          THE COURT:  Anything further, Mr. Butler?

2          MR. BUTLER:  No, sir.

3          THE COURT:  Ms. Lawless?

4          MS. LAWLESS:  Yes, Your Honor.  Your Honor, we

5  talked about this before.  And as you know, the indictment --

6  she's identified as Jane Doe One.  And it's kind of weird for

7  a person to refer to themself that way, but in the interest of

8  protecting her rights as a crime victim, that's how she's

9  going to start her comments to the court.

10          THE COURT:  That's fine.

11          SPEAKER:  Hello.  I'm Jane Doe One.  Growing up, my

12  grandma was a nurse.  We always talked about me becoming a

13  police officer following her footsteps in a way.  She knew it

14  was my dream.  When I was 14 she found Louisville Metro Police

15  Explorer program and told my mom.  It was something I loved

16  from working events to learning new thing, but then it turned

17  into something I loved into something I feared.

18          As time passed I didn't realize the damage that had

19  truly been done.  When I was 18, the case was reopened in

20  2015.  I kept my feelings and thoughts in for so long, I

21  didn't understand the damage it had done over the course of

22  five years to me as a person.  When I finally opened up to my

23  lawyer and therapist, all of the same emotions and fears were

24  resurfaced.  I lost all trust for male authorities.  Every

25  time I drove somewhere, I feared of being followed or even

1    running into him again.

2              I thought every police officer was going to be the

3    way he is.  I now fear the one thing I thought was my dream

4    and he is the person responsible for robbing me of that.  It

5    even went to greater lengths of destroying my dreams of

6    serving my country in the military.  I feared the same thing

7    would happen again.

8              Being as young as I was at the time, I didn't

9    understand the control he had over me.  I feared for my life

10   because he was a police officer.  He was supposed to be the

11   law; someone I thought I could trust.

12             Looking back now I can clearly see the ways he

13   manipulated me and the other victims.  How he was grooming all

14   of us, how he put us in the same groups to have more control

15   over us.  He knew he had the power always reminding me that

16   the age of 16 was consensual.  At the time being so young, I

17   thought it was normal.

18             Not only did he do physical things to me but also

19   mental.  I felt trapped like I had no way out.  I truly

20   believe that he will never change.  He will always be a rapist

21   and a child molester.  I fear if he was released, he would

22   continue doing the same thing he has always done.

23             Standing here today has not been easy.  I needed a

24   lot of strength to be here today, but I choose to be here; not

25   only for me, but for the other victims as well and any other

1    victims to come.  He will do this again.  I understand the

2    plea agreement.  I want justice to be served.  For me no

3    amount of time will ever heal what he has taken from me.

4            MS. LAWLESS:  Your Honor, I know you always inquire.

5    I have been in contact with the other victims in the case.

6    They could not be here today.  I believe that a victim impact

7    statement was submitted to you through the regular process and

8    Mr. Betts' lawyer, Mr. Butler, was provided with that.

9            We will stand on our sentencing memo.  I will tell

10   you something that Mr. Butler and I talked about beforehand.

11   Because of some of the things that Mr. Betts alluded to in his

12   allocution and going through some strife within his family,

13   some of his resources have -- financial resources have been

14   depleted.  We will not be asking you to impose a fine, Your

15   Honor, the other financial obligations of the special penalty

16   assessment.

17           And then we have an agreed order for you to consider

18   on the issue of restitution.  And I apologize, I had updated

19   the dates, but when I printed it, it didn't fully incorporate

20   all of that, so if I could tender that to the court

21   immediately following the conclusion of this hearing and could

22   have that indulgence, I would appreciate it.  Thank you.

23           THE COURT:  That would be fine.  Anything further,

24   Mr. Butler?

25           MR. BUTLER:  No, Your Honor.  We've signed that

1    order, so -- she's right.

2            THE COURT:  Anything further by way of argument from

3    either side?

4            MS. LAWLESS:  Not from the United States.

5            MR. BUTLER:  No, Your Honor.

6            THE COURT:  I have -- as I stated when we began this

7    hearing a few weeks ago, I have spent a fair amount of time

8    with the presentence investigation report.  I've reviewed the

9    submissions from counsel.  I've listened carefully to the

10   arguments made in both hearings.  I have now considered

11   statements from Mr. Betts and his family and from one of our

12   victims here.  I've also reviewed all of the materials that

13   were submitted in support of Mr. Betts.

14           And the sum total of that consideration is that I

15   will accept the new plea agreement and I will sentence

16   Mr. Betts accordingly.  Is there anything further from the

17   United States before I state the sentence?

18           MS. LAWLESS:  No, Your Honor.

19           MR. BUTLER:  No, sir.

20           THE COURT:  Are the parties ready for me then to

21   state the sentence here?

22           MS. LAWLESS:  Yes, sir.

23           MR. BUTLER:  Yes, sir.

24           THE COURT:  As I just indicated, I have accepted the

25   parties updated (c) plea agreement and I have concluded that a

1   downward variance here is appropriate as outlined by the

2   parties jointly. It is the judgment of the court that the

3   defendant, Kenneth R. Betts, is committed to the custody of

4   the Bureau of Prisons for a term of 192 months as to each of

5   Counts 1 through 7 in the indictment which shall be served

6   concurrently for a total term of 192 months imprisonment.

7        Upon release from imprisonment, the defendant shall

8   be placed on supervised release for a term of 20 years as to

9   each of Counts 1 through 7 which shall run concurrently for a

10  total term of 20 years. The defendant is required to abide by

11  the standard conditions of supervision which have been adopted

12  by this court as well as the special conditions; a copy of

13  which has already been provided to the defendant and counsel.

14       These special conditions include specific sex

15  offender conditions and will be explained in greater detail by

16  the U.S. Probation Office. The defendant is required to pay a

17  special penalty assessment fee of $100 as to each count of

18  conviction for a total of $700. The defendant is also ordered

19  to pay the $5,000 assessment as to Count 2 under the

20  provisions of the Justice For Victims of Trafficking Act of

21  2015.

22       These financial sanctions shall be paid in

23  accordance with the schedule of payments page to be contained

24  in the judgment. Restitution has been addressed by agreed

25  order which I will take under advisement. I'm going to waive

1    a fine and the cost of investigation, prosecution,

2    incarceration, and supervision in lieu of these significant

3    alternative financial obligations that have been imposed upon

4    the defendant.

5         The defendant has a low risk of substance abuse and

6    therefore mandatory drug testing will be suspended.  I have

7    considered the history and characteristics of the defendant

8    and those history -- those characteristics in his history have

9    been discussed at length in this and prior hearings.  I have

10   considered the nature and circumstances of the offenses here

11   which involve the exploitation of teenagers.

12        I have also considered all the factors listed at

13   18 U.S.C. 3553(a) and the advisory guidelines which we have

14   discussed.  Those guidelines produce an offense level here of

15   41 against criminal history category of one resulting in

16   advisory guideline ranges of 324 to 405 months custody, a fine

17   range of 50,000 to 500,000, and a five year to life term of

18   supervised release.

19        A sentence of 192 months custody followed by 20

20   years of supervised release is sufficient but not greater than

21   necessary to comply with the purposes set forth in 3553(a)2.

22   It satisfies statutory provisions and conforms with the

23   parties (c) plea.

24        Now, again, after careful consideration of the PSR,

25   the parties revised (c) plea agreement, and after

1    consideration of the arguments of counsel which were updated

2    today, I have concluded that it is appropriate to accept the

3    agreement and sentence accordingly.  I've determined that the

4    sentence that I have handed out here of 192 months custody

5    properly reflects the seriousness of the defendant's offenses,

6    it will promote respect for those laws which are designed to

7    protect teenagers from sexual exploitation.

8         But let me also be clear here, in reaching this

9    conclusion and agreeing with the parties that a variance is

10   appropriate, I have not been persuaded that Mr. Betts deserves

11   a lesser sentence here because of his service as a police

12   officer.

13        Sadly, Mr. Betts' conduct here dishonored the badge

14   that he wore, but I have concluded nevertheless that a

15   variance is appropriate and I've concluded that this

16   substantial sentence here is just punishment.  I've agreed to

17   the variance because I concluded that the resulting sentence,

18   while below the guideline range, is nevertheless substantial

19   and appropriate and consistent with sentences meted out in

20   unrelated cases for similar conduct.  I also note that the

21   government and defense agree that this downward variance is

22   appropriate based upon the facts specific to this case

23   including the nature of the distribution here.

24        Now, Mr. Butler, are there any objections to the

25   sentence that I've just announced or the special conditions

1    imposed which have not previously been raised?

2              MR. BUTLER:  No, Your Honor.

3              THE COURT:  And the same question to the United

4    States.

5              MS. LAWLESS:  No, Your Honor.

6              THE COURT:  The plea agreement contains -- if you

7    will remind me, Ms. Lawless, an appeal waiver; is that

8    correct?

9              MS. LAWLESS:  That's correct, Your Honor, with those

10   two discreet exceptions that are in all of our plea

11   agreements.

12             THE COURT:  So, Mr. Betts, I now need to advise you

13   of your appeal rights.  You will recall at the time of your

14   change of plea hearing, we discussed the fact that your plea

15   agreement contains an appeal waiver.  In exchange -- and

16   partial exchange for the concessions made by the government,

17   you agreed to waive your right to appeal your guilty plea, the

18   sentence that I just imposed, or your conviction unless that

19   appeal is based upon a claim of ineffective assistance of

20   counsel and/or prosecutorial misconduct.

21             Now, these waivers are generally considered valid,

22   but if you believe yours is invalid for any reason, you may

23   present that theory to the Court of Appeals and you may appeal

24   on the limited bases that I just outlined.  To effectuate your

25   appeal, you must file a notice of your appeal within 14 days

1    of the entry of judgment or should the United States appeal,

2    within 14 days of their notice of appeal.

3           If you need the assistance of the clerk's office in

4    filing that notice, you may request that assistance from them

5    and they will provide it.  If you cannot afford the fee

6    associated with that notice, you may request that it be waived

7    and if you cannot afford counsel on appeal, you may request

8    that counsel be appointed to represent you free of charge.  Do

9    you understand these appeal rights as I've outlined them to

10   you?

11          MR. BUTLER:  Yes, sir; I do.

12          THE COURT:  Now, Mr. Betts, anything further with

13   respect to your client's Rule 32 rights that we need to cover?

14          MR. BUTLER:  No, Your Honor.

15          THE COURT:  Anything else from the government?

16          MS. LAWLESS:  No, sir.

17          THE COURT:  Anything else left to cover with respect

18   to the restitution issue?  You will follow-up with a revised

19   order?

20          MS. LAWLESS:  Yes, sir.  I will correct those dates

21   and electronically file.

22          THE COURT:  That will be fine.  Anything further,

23   Mr. Butler?

24          MR. BUTLER:  Judge, we would respectfully request in

25   the judgment if the court could recommend, number one, a

1    medical facility and, number two, a location closest to his

2    home in Louisville, Kentucky.  I would note that he -- the

3    cancer situation that I think it would be appropriate to have

4    him in a medical facility.  I know you can't promise that, but

5    it might help get him there.

6         THE COURT:  Actually the way I typically do that, I

7    think it would be appropriate here.  I -- I do not recommend

8    specific facilities.  And, Mr. Betts, I'll speak to you

9    directly now with regard to that issue.  The reason is the law

10   does not give me the authority to order the Bureau of Prisons

11   to place any defendant in any specific facility.

12        As a matter of policy, the Bureau of Prisons follows

13   recommendations from sentencing judges whenever possible, so

14   what I have found to be most effective in a situation like

15   this is to recommend to the Bureau of Prisons that they assess

16   your physical health for proper placement.

17        Now, as a practical matter they will do that in any

18   event.  They do that at least on a rudimentary level for every

19   defendant, but I will make note of that here so that they can

20   take your -- they will take any existing health care concerns

21   into account in determining where to place you.  And then I'm

22   happy to recommend also that he be placed as close to his home

23   here in Louisville as possible.

24        MR. BUTLER:  Thank you.

25        THE COURT:  Anything else along those lines?

1          MR. BUTLER:  No, sir.

2          THE COURT:  If there's nothing further, then we will

3     be adjourned.

4          MS. LAWLESS:  Thank you, Your Honor.

5     (Proceedings concluded at 2:31 p.m.)

6

7                    C E R T I F I C A T E

8        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM

9     THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

10

11
           s/April R. Dowell            4/17/2023
12     Official Court Reporter, RMR, CRR        Date

13

14

15

16

17

18

19

20

21

22

23

24

25